**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CR. NO. 3:17-cr-00985-MGL** |
| | ) | |
| | ) | |
| -vs- | ) | **SENTENCING MEMORANDUM AND** |
| | ) | **MOTION FOR VARIANCE** |
| | ) | |
| **MALEIK HOUSEAL** | ) | |

PLEASE TAKE NOTICE that MALEIK HOUSEAL, by and through undersigned counsel, submits this sentencing memorandum pursuant to *United States v. Booker*, 543 U.S. 220 (2005), and 18 U.S.C. § 3553(a). For the reasons set forth in this memorandum, Mr. Houseal respectfully requests that the Court vary downward and impose a sentence below the guideline range set forth in the Presentence Investigation Report ("PSR"). Mr. Houseal requests a downward variance in light of the fact that (1) he was attacked by multiple shooters and (2) was severely injured, including suffering a gunshot wound to the hip and being hit by an automobile, which broke his leg. Although now out of a wheelchair, Mr. Houseal will suffer lifelong limitations to his mobility. In short, Mr. Houseal has already suffered a great deal for his offense and this suffering should be taken into account in discerning a sentence in his case.

**I.      MR. HOUSEAL WAS THE VICTIM OF AN ATTACK, AS CONFIRMED BY THE VIDEO OF THE INCIDENT AND LAW ENFORCMENT'S DESCRIPTION OF MR. HOUSEAL'S ROLE IN THE INCIDENT.**

In the early morning hours of September 16, 2017, Mr. Houseal, his brother, and his brother's girlfriend arrived at the Empire Supper Club, which is located at the corner of Park Street and Lady Street in Columbia. They are shown on video entering the club a few minutes before

2:00 a.m.[1] Mr. Houseal does not appear to be armed at this time. The club began to close down shortly after 2:00 a.m. and the patrons began to exit the club out onto the sidewalk and into the intersection of Park and Lady Streets. At approximately 2:07 a.m., Mr. Houseal is seen leaving the club and heading toward the parking lot behind the club on Park Street. A couple minutes after Mr. Houseal leaves the club, the eventual shooters, Mr. Bates and Mr. Lartman, along with others, leave the club and walks down Park Street toward the parking lot. As Mr. Bates and Mr. Lartman turn the corner to enter the parking lot, they pass Mr. Houseal as he is returning from the parking lot. The video makes clear that, after Mr. Houseal returned from the parking lot, he possessed the firearm referenced in the indictment. After Mr. Houseal passes Mr. Bates and Mr. Lartman, he keeps an eye on them, sometimes walking backwards to keep them in view, these individuals who would in a few minutes shoot him, his brother, and his brother's girlfriend.

For the next several minutes, Mr. Houseal is in a panicky state, walking back and forth looking in every direction to see if Mr. Bates and Mr. Lartman are threatening him. Eventually, Mr. Bates, who is driving a Ford Mustang, and Mr. Lartman, his passenger, pull to the exit of the parking lot on Park Street and stop, poised at the exit. The car remains in this position for a long time while Mr. Houseal, along with his companions and other patrons, stands on the sidewalk adjacent to the club on Park Street.

At this critical moment, all Mr. Bates had to do was simply pull out of the parking lot and no one would have been hurt at the club that night. Eventually, as Mr. Houseal turns *away* from

---

[1] The defense anticipates playing approximately 5 minutes of the video produced in discovery as RESTRICTED_ACCESS_005427, which is video taken from the vantage point of the intersection of Park Street and Lady Street, looking down Park Street showing the sidewalk extending back from the club entrance along Park Street to the parking lot behind the club.

the vehicle and steps back toward the entrance of the club, a flurry of gunfire erupts from multiple shooters in the Mustang. The Mustang pulls out and several vehicles follow, one of which contained at least one additional shooter, Keveas Gallman, who can be seen firing as the car leaves the exit. Another vehicle, a black BMW driven by female associates of the shooters, runs Mr. Houseal down, hitting him and flipping him up over the car, breaking his leg. As law enforcement reported after speaking to a security guard at the club who saw the incident: "[H]e [the security guard] reported seeing a dark in color vehicle [the Mustang with Bates and Lartman] with a person shooting leaning out of the back seat and following that vehicle what he identified as a white in color Grand Marquis (with Gallman) with a person hanging out of the driver side back seat shooting a firearm. He stated the white car followed the dark color vehicle." (RESTRICTED_ACCESS_005806).

After the shooting, Mr. Houseal can be seen depositing the firearm in some stacked chairs outside the club as he retreats to the club entrance for medical assistance. By the time he reaches the entrance, he can no longer walk and lays on the ground. His brother and his brother's girlfriend were also shot and severely injured by the shooters in the vehicles. After this incident, the shooters, including Mr. Bates and Mr. Lartman, went to another club, Vault, on Broad River Road, and got into *another* shoot out. In this second shootout, Mr. Bates was struck in the foot and had to go to the hospital.

Mr. Houseal underwent surgery to implant a metal plate in his leg and address the gunshot wound to his hip. After his surgery, he was interviewed by law enforcement. Mr. Houseal was in a wheelchair with his head and leg bandaged during the interview. The law enforcement officers had reviewed the video of the shooting and were well aware of the fact that Mr. Houseal was

turning away when Mr. Bates, Mr. Lartman, and others opened fire on the crowd outside the club. The following excerpts are law enforcement's comments to Mr. Houseal, all of which are contained in discovery and set forth in the PSR, confirming that he was not the assailant and was, instead, the victim of an attack.

- "I can tell you and I can *assure* you that I already know, just based off the video evidence, that these guys shot at you first. Ok, I *know* that already. I guarantee already. And I'm telling you that upfront. Ok, so I don't want you to think that I think you shot at them first. I *know*—that's no bullshit—that they shoot at you first. Not just that someone said it, but there's evidence to show that." (RESTRICTED_ACCCESS_000445 at 6:50).

- "Again, the video's got you firing right back. That's self-defense. That's self-defense." (*Id*. at 54:26).

- "We could tell, just by your actions, something was fucked up. Somebody either got word to you, you felt something wrong, and you felt as though you needed to protect yourself."  (*Id*. at 55:31).

- "You didn't pull out on them first. We know that. Y'all left. Y'all like, 'a'ight, ain't nothing going down, we gone go this way.' Essentially, not engaging in a problem." (*Id*. at 56:01).

- "Also, we know enough to say, hey man, the young man [Houseal] shot, but the young man is not, should not…you didn't start this shit. Not, not that…not this shooting. You understand? The dudes obviously shot at you when you turned around and was walking away." (*Id*. at 59:50).\

- "It is obvious to us that you was trying to avoid this situation." (*Id*. at 1:05:12).

(PSR at ¶ 20).

Mr. Bates, Mr. Lartman, and others were charged with attempted murder of Mr. Houseal, his brother, his brother's girlfriend, and the other victims. To date, Mr. Lartman, who started the shooting along with Mr. Bates, has pled guilty to attempting to murder all of the victims. Mr. Bates pled guilty in March of this year, but his sentencing has been deferred.

During Mr. Lartman's plea and sentencing before the Honorable L. Casey Manning, Assistant Solicitor Vance Eaton described the individuals who Mr. Lartman attempted to murder, including Mr. Houseal. Mr. Eaton showed a picture of Mr. Houseal after the shooting and stated the following: "This is Maleik Houseal. You know, I call him a victim -- in quotes. He is not the real innocent party in this incident. *But he did have a right to self-defense. He had his back turned when they opened fire*." (Transcript dated April 2, 2019, at p. 39 (attached as **Exhibit A**) (emphasis added)).

Again, had Mr. Bates simply pulled out of that parking lot and proceeded down Parks street toward the Vista, there would have been nothing memorable about September 16, 2017, at the Empire Supper Club. Mr. Houseal was turning his back to walk away from the trouble when Mr. Bates and Mr. Lartman opened fire. Mr. Gallman followed up with additional shots as he exited the parking lot in the Grand Marquis. Then Mr. Houseal was struck by the black BMW, driven by female associates of Bates and Lartman.

While Bates, Lartman, and Gallman were charged with attempted murder, Mr. Houseal was charged only with weapons possession crimes.

## II. MR. HOUSEAL SUFFERED SEVERE INJURIES FROM WHICH HE WILL NEVER FULLY RECOVER.

Mr. Houseal spent several months after the shooting in a wheelchair in custody at the Alvin S. Glenn Detention Center. At one point during his time in the wheelchair there, the detention center put Mr. Lartman in the same pod with Mr. Houseal, not realizing that Mr. Lartman was charged with attempting to murder someone in the pod, Mr. Houseal. After Mr. Houseal and his family alerted the detention center personnel that Mr. Lartman was in the same pod with the individual he was charged with attempting to murder, Mr. Lartman was moved to a different pod.

Mr. Houseal had a plate implanted in his lower leg to repair a bone that was broken when he was struck by the black BMW on Park Street immediately after being shot. The bullet that hit his hip is still in his body. Although he can now walk again, usually with a limp, he indicates the doctors have told him that he will never enjoy the full use and mobility that he had before the incident.

Mr. Houseal respectfully requests that the Court keep in mind the injuries he suffered in connection with the Court's consideration of all of the 18 U.S.C. § 3553(a) factors, particularly the need for the sentence imposed to provide just punishment for the offense and to deter future criminal conduct. Simply put, Mr. Houseal has already paid a heavy price for and learned a valuable lesson from this offense.

## CONCLUSION

Mr. Houseal respectfully requests, in light of other factors set forth in 18 U.S.C. § 3553(a) and for the reasons set forth in this memorandum and to be presented at sentencing, that the Court vary downward and impose a sentence below the guideline range set forth in the PSR.

    Respectfully submitted,

    /s/Daniel C. Leonardi
    Daniel C. Leonardi, Fed. ID No. 9332
    Assistant Federal Public Defender
    1901 Assembly Street, Suite 200
    Columbia, South Carolina, 29201
    T: 803-765-5076
    dan_leonardi@fd.org

Columbia, South Carolina

June 21, 2019