State of South Carolina )   In the Court of General Sessions
                        )          Fifth Judicial Circuit
County  of  Richland    )           2018-GS-40-8274
                                    2018-GS-40-8276
                                    2018-GS-40-8277
                                    2018-GS-40-8278
                                    2018-GS-40-8280
                                    2018-GS-40-8282
                                    2018-GS-40-8284
                                    2018-GS-40-8285
                                    2018-GS-40-8286


State of South Carolina,    )
                            )
          Plaintiff,        )
                            )
   vs.                      )       Transcript of Record
                            )
Jenorris Lartman,           )
                            )
          Defendant.        )
                            )
_____)


                              April 2, 2019
                              Columbia, South Carolina

B E F O R E:

    The Honorable L. Casey Manning, Judge

A P P E A R A N C E S:

    Byron E. Gipson, Solicitor
    R. Vance Eaton, Assistant Solicitor
    Stephanie Taylor, Assistant Solicitor
    Attorneys for Plaintiff

    Arthur K. Aiken, Esquire
    Attorney for Defendant


                          Maryann S. Nevers, CVR-M-CM
                            Circuit Court Reporter

2

# I N D E X

Proceedings . . . . . . . . . . . . . . . . . . . . . 4

Certificate Page. . . . . . . . . . . . . . . . . . 53

3

1                              E X H I B I T S

2    NO.                    DESCRIPTION                  I.D.  EVID.

3              No exhibits marked during proceeding.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1          TRANSCRIPT OF RECORD

2     (Whereupon, the proceeding was commenced at 10:29

3     a.m.)

4     MR. EATON:  If it please the Court, Your Honor?

5     THE COURT:  Yes, sir.

6     MR. EATON:  The state calls Jenorris Lartman.

7     (Whereupon, the defendant came forward.)

8     DEPUTY CLERK OF COURT:  If you could please raise your

9  right hand.  Raise your right hand; state your full name,

10  please:

11     THE DEFENDANT:  My name Jenorris Alexander Tremay

12  Lartman.

13          JENORRIS LARTMAN, having been first duly sworn,

14  testified and stated as follows:

15     THE COURT:  Yes, sir, Solicitor.

16     MR. EATON:  Thank you, Your Honor.  If it pleases the

17  Court, Vance Eaton for the state.  Standing before you is

18  Jenorris Lartman and his attorney, Art Aiken.  Mr. Lartman

19  is here today to plead guilty to seven account -- seven

20  counts of attempted murder, one count of possession of a

21  weapon by a person convicted of a crime of violence, and

22  one count of possession of a weapon during the commission

23  of a violent crime.

24     Your Honor, Mr. Lartman is pleading guilty while --

25  with my recommendation -- with the state's recommendation

5

1  of a range of prison time of 18 to 25 years, concurrent on

2  all charges.

3       THE COURT:  All right.  How long has he been in jail?

4       MR. AIKEN:  He's been in jail since -- I'm sorry.  I

5  forgot to get that date, Your Honor.

6       THE COURT:  That's all right.

7       MR. AIKEN:  I apologize.

8       THE COURT:  We can ---

9       MR. AIKEN:  Give ---

10      THE COURT:  --- find out later on because ---

11      MR. AIKEN:  Yeah.  I apologize.

12      THE COURT:  Since he ---

13      MR. AIKEN:  Because ---

14      THE COURT:  --- was arrested, he has ---

15      MR. AIKEN:  Since he was arrested.  Yes, sir.

16      THE COURT:  It's November ---

17      MR. EATON:  November 2nd ---

18      THE COURT:  --- 2017?  We'll figure it out.

19      MR. AIKEN:  Actually, he was in custody in the

20  hospital before then, because he was -- he was actually

21  shot in this -- in this situation.

22      THE COURT:  I don't think you get credit for time

23  served if you're in a hospital.

24      MR. AIKEN:  Okay, Your Honor.

25      THE COURT:  Okay.  Maybe you do, or I don't think so.

6

1   But it's not going to matter much in this case.

2         So, Mr. Aiken, you represent Jenorris Lartman; is that

3   correct?

4         MR. AIKEN:  That's correct, Your Honor.

5         THE COURT:  Have you explained to Mr. Lartman the

6   charges contained in these indictments, this

7   seven/eight/nine -- nine indictments, the possible

8   punishments, and his rights, including his constitutional

9   right to a jury trial?

10        MR. AIKEN:  I have, Your Honor.

11        THE COURT:  And in your opinion, does Mr. Lartman

12  understand the charges, the punishments, and his rights,

13  sir?

14        MR. AIKEN:  He does, Your Honor.

15        THE COURT:  How does he indicate to you he wishes to

16  plead, guilty ---

17        MR. AIKEN:  He wishes ---

18        THE COURT:  --- or not guilty?

19        MR. AIKEN:  He wishes to plead guilty, Your Honor.

20        THE COURT:  You agree with his decision to plead

21  guilty?

22        MR. AIKEN:  I do.

23        THE COURT:  All right.  From your investigation of the

24  facts and circumstances surrounding these cases, do you

25  feel that the state could produce sufficient evidence to

7

1   convince a jury here in Richland County of Mr. Lartman's

2   guilt beyond a reasonable doubt; and, if he were to stand

3   trial on these charges, his convictions would be probable?

4        MR. AIKEN:  Yes, sir.

5        THE COURT:  Now, has Mr. Lartman been ordered to

6   submit to a mental examination to determine his competency

7   to stand trial?

8        MR. AIKEN:  No, sir.

9        THE COURT:  Any question in your mind, Mr. Aiken, that

10   Mr. Lartman is, in fact, competent to enter this guilty

11   plea?

12        MR. AIKEN:  None ---

13        THE COURT:  Because ---

14        MR. AIKEN:  --- Your Honor.

15        THE COURT:  --- we know, science would suggest

16   anything other than that he's competent and he understands

17   what he's doing; is that fair enough?

18        MR. AIKEN:  That's correct, Your Honor.

19        THE COURT:  All right.  You are Jenorris Lartman; is

20   that correct?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  Mr. Lartman, before I can accept your plea

23   of guilty, it is necessary for me to make sure that you're

24   making this plea freely and voluntarily.  To do that, sir,

25   I need to ask you a series of questions.  At any point

8

1    during my questioning of you, if you do not understand

2    anything I say or any words that I use, please stop me.

3    I'll be more than happy to repeat or explain anything I've

4    said, Mr. Lartman.  Additionally, I'll be more than happy

5    to stop this plea and allow you as much time as you feel

6    you may need to consult with your lawyer, Mr. Aiken.  Do

7    you understand, sir?

8         THE DEFENDANT:  Yes, sir.

9         THE COURT:  How old are you, Mr. Lartman?

10        THE DEFENDANT:  I'm 29, sir.

11        THE COURT:  Twenty-nine?

12        How far did you go in school?

13        THE DEFENDANT:  Tenth grade.

14        THE COURT:  What kind of work have you done?

15        THE DEFENDANT:  I was working at a lumber yard.  It's

16   called West Frazier.

17        THE COURT:  It's over ---

18        THE DEFENDANT:  We make ---

19        THE COURT:  --- in Newberry?  Was that ---

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  All right.  How long did you work there?

22        THE DEFENDANT:  I worked there a year.

23        THE COURT:  Okay.  Mr. Lartman, have you ever been

24   treated for the abuse of alcohol or drugs or for mental

25   illness?

1        THE DEFENDANT:  No, sir.

2        THE COURT:  Have you taken any medications, drugs, or

3    alcohol in the past 24 hours?

4        THE DEFENDANT:  No, sir.

5        THE COURT:  Are you today aware of any physical,

6    nervous, or emotional problem that might keep you from

7    understanding what you're doing?

8        THE DEFENDANT:  No, sir.

9        THE COURT:  You know what you're doing, Mr. Lartman;

10    is that fair enough?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  You agree, Mr. Aiken, that Mr. Lartman

13    knows, understands, and appreciates what he's doing here

14    this morning?

15        MR. AIKEN:  I do, Your Honor.

16        THE COURT:  Now, Mr. Lartman, you heard your lawyer,

17    Mr. Aiken, telling me that he has explained to you the

18    charges contained in these nine indictments, the possible

19    punishments, and your rights, including your right to a

20    jury trial and that you understand these things; is that

21    correct?

22        THE DEFENDANT:  Yes, sir.

23        THE COURT:  All right.  Mr. Lartman, you are first

24    before me on Indictment No. 2018-8284, the *State v.*

25    *Jenorris Lartman*.  This is an indictment for attempted

10

1   murder.  Do you understand this charge?

2        THE DEFENDANT:  Yes, sir.

3        THE COURT:  This indictment, Mr. Lartman, alleges that

4   you did here in Richland County, on or about September the

5   16th of 2017, did with the intent to kill, attempt to kill

6   Gloria Massey with malice aforethought, either expressed or

7   implied.  Do you understand this allegation?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  And you want to plead guilty to attempted

10  murder; is that correct?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  You realize that by doing so, Mr. Lartman,

13  as by pleading guilty to attempted murder that you could go

14  to jail for 30 years?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  Knowing, then, sir, that you can go to

17  prison for 30 years by pleading guilty to this charge, do

18  you still wish to plead guilty to it?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Now, next, Mr. Lartman, I have before me

21  Indictment No. 2018-8282, *State v. Jenorris Lartman*.  And

22  once again, Mr. Lartman, this is a -- an indictment for

23  attempted murder.  So once again, I would assume you

24  understand the charge; is that fair enough?  I have to ask

25  you this over and over again.  You understand that?

1        THE DEFENDANT:  Yes, sir.

2        THE COURT:  This particular indictment, Mr. Lartman,

3    alleges that you did here in Richland County, on or about

4    September the 16th of 2017, did, with the intent to kill,

5    attempt to kill Jovan Caldwell with malice aforethought,

6    either expressed or implied.  You understand this

7    allegation, once again, Mr. Lartman?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  And once again, you want to plead guilty

10   to attempted murder; is that correct?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  And you realize that by doing so, once

13   again, do you not, Mr. Lartman, that you could go to jail

14   for 30 years.  Knowing that, you still wish to enter this

15   plea; is that correct?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  All right.  Next, Mr. Lartman, I have

18   before me Indictment No. 2018-8280, *State v. Jenorris*

19   *Lartman*, once again.  And once again, it's an indictment

20   for attempted murder.  And once again, I got to ask you and

21   I assume you understand the charge, do you not, sir?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  All right.  This particular indictment,

24   Mr. Lartman, alleges that you did here in Richland County,

25   on or about September the 16th of 2017, did, with the

12

1    intent to kill, attempt to kill Arevia Pressley.  Did I say

2    that correctly -- Arevia Pressley?

3        MR. EATON:  (Nodded head up and down.)

4        THE COURT:  All right.  --- with malice aforethought,

5    either expressed or implied.  You understand this

6    allegation?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Once again, you want to plead guilty to

9    attempted murder; is that correct, Mr. ---

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  And once again, Mr. Lartman, you realize

12    that by doing so, sir, you could go to jail for 30 years.

13    Knowing that, you still wish to plead guilty; is that

14    correct?

15        THE DEFENDANT:  Yes, sir.

16        THE COURT:  Next, Mr. Lartman, I have before me

17    Indictment No. 2018-8278, the *State v. Jenorris Lartman*.

18    Once again, this is an indictment for attempted murder.

19    Now, Mr. Lartman, this indictment alleges that you did here

20    in Richland County, on or about September the 16th of 2017,

21    with malice -- with the intent to kill, that you attempted

22    to kill Kristie Logan with malice aforethought, either

23    expressed or implied.  Do you understand this, once again?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  Once again, you plead -- want to plead

13

guilty to attempted murder; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  And once again, you realize, do you not,
Mr. Lartman, that by doing so, sir, you could go to jail
for 30 years.  Knowing that, you still wish to enter this
plea; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Next, Mr. Lartman, I have
before me Indictment No. 2018-8277, the *State v. Jenorris
Lartman*, once again.  And once again, it is an indictment
for attempted murder.  Mr. Lartman, once again, you
understand the charge; is that fair enough?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  The indictment alleged, Mr.
Lartman, that you did here in Richland County, on or about
September the 16th of 2017, with the intent to kill,
attempt to kill Monica Reaves with malice aforethought,
either expressed or implied.  You understand this
allegation, once again?

THE DEFENDANT:  Yes, sir.

THE COURT:  Once again, you want to plead guilty to
attempted murder?

THE DEFENDANT:  (No audible response.)

THE COURT:  Realizing, once again, do you not, Mr.
Lartman, that by doing so, sir, you could go to jail for 30

14

1    years.  Knowing that, do you still wish to plead guilty?

2         THE DEFENDANT:  Yes, sir.

3         THE COURT:  All right.  Next, Mr. Lartman, I have

4    before me Indictment No. 2018-8276, *State v. Jenorris*

5    *Lartman*, once again, an indictment for attempted murder.

6    Now, this particular indictment, Mr. Lartman, alleges that

7    you did here in Richland County, on or about September the

8    16th of 2017, with the intent to kill, attempted to kill

9    Khali Houseal.

10        MR. EATON:  Khali Houseal, Your Honor.

11        THE COURT:  Khali ---

12        MR. EATON:  --- Houseal.

13        THE COURT:  --- Houseal.  Okay.

14        --- with malice aforethought, either expressed or

15   implied.  This is an individual that was shot in the act --

16   during that incident, I do believe.  I don't know if

17   they're here or not.  But you understand, once again, this

18   allegation on Indictment No. 2018-8276.  And once again,

19   you want to plead guilty to attempted murder; is that

20   correct?

21        THE DEFENDANT:  Yes, sir.

22        THE COURT:  All right.  And next, Mr. Lartman, I have

23   before me Indictment No. 2018-8274, *State v. Jenorris*

24   *Lartman*, once again -- once again, an indictment for

25   attempted murder.  And the allegations for this indictment,

15

Mr. Lartman, are that you did here in Richland County, on

or about September the 16th of 2017, with the intent to

kill, attempt to kill Maleik Houseal -- what -- what's ---

MR. EATON:  Houseal.  Yes, sir.

THE COURT:  --- with malice aforethought, either

expressed or implied.  Once again, you understand this

allegation; is that fair enough, Mr. Lartman?

THE DEFENDANT:  Yes ---

THE COURT:  And once again, you want to plead guilty

to attempted murder, knowing, once again, do you not, sir,

that by doing so, you could go to jail for 30 years.

Knowing that, do you still with to plead?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Next, Mr. Lartman, I have

before me Indictment No. 2018-8286, *State v. Jenorris*

*Lartman*.  This is an indictment for -- oh -- it says

"Weapons sale or delivery" -- let me see what -- let me see

what -- "unlawful possession of a pistol by a person

convicted of a crime of violence."  You understand this

charge, sir?

THE DEFENDANT:  Yes, sir.

THE COURT:  The indictment alleges, Mr. Lartman, that

you did here in Richland County, on or about September the

16th of 2017, possess a handgun, having been convicted of a

crime of violence, robbery, as defined in Section 16-23-10

16

1  of the Code of Laws of 1976, as amended.  You did -- you

2  shouldn't have had a gun because you have a conviction for

3  a robbery.  You understand that?

4       THE DEFENDANT:  Yes, sir.

5       THE COURT:  That's why you're pleading guilty to

6  possession -- unlawful possession of a pistol by a person

7  convicted of a violent crime; is that correct?

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  You realize that by doing so, you could go

10 to jail for 5 years.  It's 5 years, I ---

11      MR. EATON:  Yes, sir.

12      THE COURT:  --- do believe.

13      You understand that?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  Knowing, then, Mr. Lartman, you could go

16 to prison for 5 years by pleading guilty to having this gun

17 that you shouldn't have had, do you still wish to plead

18 guilty to it?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  All right.  All right.  Finally, Mr.

21 Lartman, I have before me Indictment No. 2018-8285, *State

22 v. Jenorris Lartman*.  This is an indictment for possession

23 of a weapon during the commission of a violent crime.  You

24 understand this charge?

25      THE DEFENDANT:  Yes, sir.

17

1      THE COURT:  The allegations are, Mr. Lartman, that you

2  did here in Richland County, on or about September the 16th

3  of 2017, possess a firearm or visibly display what appeared

4  to be a firearm or visibly displayed a knife during the

5  commission or attempted commission of a violent crime.  You

6  understand this allegation?

7      THE DEFENDANT:  Yes, sir.

8      THE COURT:  You want to plead, again, to possession of

9  a weapon during the commission of a violent crime?  The

10  violent crime is shooting at everybody and everything else.

11  You understand that, don't you?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  Do you realize that by pleading to guilty

14  this charge, Mr. Lartman, you could go to jail for 5 years.

15  Knowing that, do you still wish to plead guilty?

16      THE DEFENDANT:  Yes, sir.

17      THE COURT:  Now, Mr. Lartman, are you currently on

18  probation or parole for any prior offenses?

19      THE DEFENDANT:  No, sir.

20      THE COURT:  Mr. Lartman, I could run these sentences

21  on these nine indictments consecutively; that is, put one

22  after the other or add one other.  If I did so, it appears

23  as if you're looking at 220 years in jail -- 10 -- 230

24  years in jail.  I think that's right.  That's your figures,

25  right?

18

1      MR. AIKEN:  I -- I ---

2      THE COURT:  That's ---

3      MR. AIKEN:  --- I believe it's 220.

4      THE COURT:  220 -- okay.

5      MR. AIKEN:  It'd be 210 on the ---

6      THE COURT:  Oh, yeah, 5 and 5.  Yeah.

7      MR. AIKEN:  Yes, sir.

8      THE COURT:  Yeah.  Not that it makes that much

9  difference, but I've got to explain all this to you anyway.

10  You understand that?  I mean ---

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  --- the recommendation is between 18 and

13  25.  And, Mr. Lartman, I promise, I'm going to give you

14  between 18 and 25.  What I'm going to give you, I don't

15  know yet.  But I will follow the recommendations, okay?

16      But I've got to explain to you what you're facing.  So

17  if I ran all the sentences on these nine indictments

18  consecutively -- that is, put one after the other or add

19  one to the other -- you're looking at 220 years in jail.

20  You understand that?

21      THE DEFENDANT:  Yes, sir.

22      THE COURT:  Knowing all that, sir, do you wish to

23  continue and plead guilty?

24      THE DEFENDANT:  Yes, sir.

25      THE COURT:  Now, Mr. Lartman, when you plead guilty,

19

1   you have to give up certain basic rights.  First of all,

2   you have to give up your right to remain silent.  This is

3   your right against self-incrimination, Mr. Lartman, your

4   right to say nothing at all.  No one can compel you to come

5   into court to provide evidence or to testify against

6   yourself.  Do you understand this, sir?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Secondly, Mr. Lartman, when

9   you're pleading guilty, you have to give up your right to a

10  jury trial.  That is your right for a jury here in Richland

11  County to decide whether or not you're guilty of these nine

12  charges, or these nine indictments.  A jury would base its

13  decision on whatever evidence the state would introduce at

14  trial against you and also on whatever evidence you and

15  your lawyer, Mr. Aiken, may wish to introduce.

16         Now, Mr. Lartman, I emphasize "may wish to introduce,"

17  sir, because in a trial, you'd be presumed innocent, would

18  not have to prove anything, and you could not be convicted

19  unless the state convinced all 12 jurors of your guilt

20  beyond a reasonable doubt.  The jury's decision would have

21  to be unanimous on all nine of these different indictments

22  before you can be convicted of any of them.  Do you

23  understand that -- I mean, you got to be -- the jury's

24  decision has to be unanimous on any conviction that you

25  get.  You understand that?

20

1      THE DEFENDANT:  Yes, sir.

2      THE COURT:  Thirdly, Mr. Lartman, when you plead

3  guilty, you give up you right to confront and to be

4  confronted by the witnesses against you.  That is your

5  right to see, hear, and cross-examine any witnesses the

6  state may call to testify against you during trial.  In

7  addition, Mr. Lartman, by pleading guilty, you give up your

8  right to subpoena and call witnesses on your own behalf.

9  That is someone may testify for you.  Do you understand

10  that, sir?

11      THE DEFENDANT:  Yes, sir.

12      THE COURT:  Now, do you understand these rights I just

13  mentioned to you, Mr. Lartman?

14      THE DEFENDANT:  Yes, sir.

15      THE COURT:  Do you understand, sir, that when you

16  plead guilty, you have to give up these constitutional

17  rights?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  And is that what you want to do?

20      THE DEFENDANT:  Yes, sir.

21      THE COURT:  You want to give up your constitutional

22  rights?

23      THE DEFENDANT:  Yes, sir.

24      THE COURT:  Now, you realize you will not receive a

25  jury trial on any of these nine indictments by pleading

21

1  guilty to them.  You understand that, don't you?

2      THE DEFENDANT:  Yes, sir.

3      THE COURT:  I tell you that, Mr. Lartman, because you

4  may have some defenses to these charges.  Of course, I have

5  no way of knowing that.  But you do realize that by

6  pleading guilty here today, you give up any defenses you

7  might have?  Do you understand that?

8      THE DEFENDANT:  Yes, sir.

9      THE COURT:  Additionally, Mr. Lartman, I tell you that

10 because when you were arrested by the Columbia Police

11 Department, you may have given some type of incriminating

12 statements; that is, made some admissions or confessions

13 about your guilt.  You need to realize that by pleading

14 guilty here today, you waive your right to later on

15 challenge or contest, if you gave any statements, whether

16 or not they were taken or obtained from you freely and

17 voluntarily, in accordance with your constitutional rights.

18 Do you understand that?

19     THE DEFENDANT:  Yes, sir.

20     THE COURT:  Now, Mr. Lartman, I'll ask you once again:

21 Did you commit these offenses?

22     THE DEFENDANT:  Yes, sir.

23     THE COURT:  So once again, Mr. Lartman, you tell me

24 you're pleading guilty to Indictment No. 2018-8285 -- this

25 is possession of a weapon during the commission of a

22

1    violent crime -- because back on September the 16th of

2    2017, you possessed a firearm when you were shooting at

3    people, I think it was.  Is that correct?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Pleading guilty because you had a gun and

6    during the commission of a violent crime; that is, the

7    attempted murder?

8         THE DEFENDANT:  (No audible response.)

9         THE COURT:  All right.  You got ---

10        THE DEFENDANT:  Yes, sir.

11        THE COURT:  --- that?  Yeah.

12        And once again, Mr. Lartman, in connection with

13   Indictment No. 2018-8286 -- this is the indictment for

14   unlawful possession of a pistol by a person convicted of a

15   violent crime.  Once again, you're pleading guilty to this

16   charge, are you not, sir, because back on September the

17   16th of 2017, you possessed a handgun after having been

18   convicted of a violent crime of robbery sometime in the

19   past.  You understand that, don't you?

20        THE DEFENDANT:  Yes, sir.

21        THE COURT:  Pleading guilty because you are guilty; is

22   that fair enough?

23        THE DEFENDANT:  Yes, sir.

24        THE COURT:  And once again, Mr. Lartman, in connection

25   with Indictment No. 2018-8274, 2018-8276, 2018-8277, 2018-

23

1    8278, 2018-8280, 2018-8282, and 2018-8284, these seven

2    indictments for attempted murder, you're pleading guilty,

3    once again, because back on September the 16th of 2017, you

4    attempted to kill one Kristie Logan -- okay?  I'm going

5    with these individual once again, okay?

6         THE DEFENDANT:  Yes, sir.

7         THE COURT:  And back on September the 16th of 2017,

8    you attempted to kill Monica Reaves; is that correct?

9         THE DEFENDANT:  Yes, sir.

10        THE COURT:  And back on September the 16th of 2017,

11   you attempted to kill Khalil -- Khali ---

12        MR. EATON:  Khali, I think, Your Honor.

13        THE COURT:  --- Khali Houseal?  And ---

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  --- once again, back on September the 16th

16   of 2017, you attempted to kill Maleik Houseal?

17        THE DEFENDANT:  (No audible response.)

18        THE COURT:  And once again, back on September the 16th

19   of 2017, you attempted to kill Gloria Massey?

20        THE DEFENDANT:  (No audible response.)

21        THE COURT:  And once again, back on September the 16th

22   of 2017, you attempted to kill one Jovan Caldwell?

23        THE DEFENDANT:  (No audible response.)

24        THE COURT:  And once again, back on September the 16th

25   of 2017, you attempted kill Arevia Pressley?

24

1    THE DEFENDANT:  (No audible response.)

2    THE COURT:  Those are the seven indictments for

3    attempted murder.  Well, that's all nine of these

4    indictments:  possession of a gun by somebody convicted of

5    a violent crime, possession of a crime during the

6    communication of a violent crime -- you plead guilty to all

7    nine of these indictments because you are, in fact, guilty

8    of all nine of these charges; is that fair enough, Mr.

9    Lartman?

10    THE DEFENDANT:  Yes, sir.

11    THE COURT:  All right.  Solicitor, once again -- hold

12    on.  I know sketchy -- somewhat what it is.  Recommendation

13    is from 18 to 25, all concurrent.  And you got to tell me:

14    What are you dropping in exchange for this plea, if

15    anything?

16    MR. EATON:  We are not dropping any charges, Your

17    Honor.

18    THE COURT:  No charges are being dropped?

19    MR. EATON:  No, sir.

20    THE COURT:  This covers everything, Mr. Aiken?

21    MR. AIKEN:  Yes, Your Honor.

22    THE COURT:  Anything additional that needs to be added

23    to the record in connection with any plea negotiations or

24    any recommendation?

25    MR. AIKEN:  The result of the plea negotiation is what

25

1    we're doing here today.

2        THE COURT:  Okay.  All right.

3        You understand all this, Mr. Lartman?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  You still wish to continue and plead

6    guilty?

7        THE DEFENDANT:  Yes, sir.

8        THE COURT:  Now, sir, are you fully satisfied with the

9    manner in which your lawyer here, Mr. Aiken, the way he has

10   advised and represented you on these charges?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  Have you talked with him for as long as

13   for as often as you feel it necessary for him to properly

14   represent you?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  You need any more time to talk to him?

17       THE DEFENDANT:  No, sir.

18       THE COURT:  Have you understood your talks with him?

19       THE DEFENDANT:  Yes, sir.

20       THE COURT:  Mr. Lartman, has Mr. Aiken done everything

21   for you, you feel he should do or could do on your behalf

22   in advising and representing you on these charges?

23       THE DEFENDANT:  Yes, sir.

24       THE COURT:  Has he done anything you feel he should

25   not have done?

26

1        THE DEFENDANT:  No, sir.

2        THE COURT:  Are you completely satisfied with his

3   services?

4        THE DEFENDANT:  Yes, sir.

5        THE COURT:  You have any complaints, Mr. Lartman,

6   against anyone at the Columbia Police Department?

7        THE DEFENDANT:  No, sir.

8        THE COURT:  Any complaints against anyone working here

9   in the solicitor's office?

10       THE DEFENDANT:  No, sir.

11       THE COURT:  Mr. Lartman, have you understood my

12  questions?

13       THE DEFENDANT:  Yes, sir.

14       THE COURT:  Is there anything you want my -- is there

15  anything you want to ask me about any -- that we just went

16  over -- anything we just went over?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Yes, sir.

19       THE DEFENDANT:  They're saying I was convicted of a

20  robbery.  I was never convicted of a robbery.

21       THE COURT:  I -- I don't know.  This -- this -- this

22  is what it says.  But let's double-check.  It's all right,

23  Mr. Lartman.

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  I mean, the deal is not going to change.

27

1      THE DEFENDANT:  Okay.

2      THE COURT:  I mean, you know, the range is still going

3  to be the same.  But let's double-check that, okay?

4                  (Off the record briefly.)

5      MR. EATON:  If I may -- if I may, Your Honor?

6      THE COURT:  Yes, sir.

7      MR. EATON:  I didn't know if you -- excuse me for ---

8      THE COURT:  No.  Go ahead.

9      MR. EATON:  --- looking at this on this phone.  But we

10  -- we have this -- we sent this to -- to Mr. Aiken

11  yesterday.  It is sentencing paperwork from Newberry, South

12  Carolina, for common law robbery.  May -- maybe that was

13  the source of the confusion that this was common law ---

14      THE COURT:  Well, this is common law robbery, a

15  strong-arm robbery.  It was not armed robbery.

16      THE DEFENDANT:  Okay.

17      THE COURT:  That makes a difference?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  Okay.  No.  It's -- it's some -- just want

20  to make sure everybody -- I -- it's more important that you

21  understand exactly what you're doing than anybody else

22  here, Mr. Lartman.

23      So the robbery was common law robbery or strong-arm

24  robbery.  A gun was not involved.  Does that clear it up

25  for you now?

28

1    THE DEFENDANT:  Yes, sir.

2    THE COURT:  All right.  So additionally, Mr. Lartman,

3 I need to tell you that you have a right to appeal this

4 guilty plea and whatever sentence I may impose upon you.

5 But if you're going to appeal, you need to file a notice of

6 intent to appeal within ten days of today's date.  You

7 understand that?

8    THE DEFENDANT:  Yes, sir.

9    THE COURT:  In addition, Mr. Lartman, once you're in

10 the Department of Corrections and you think about it and

11 later on feel or find or think that you have some

12 complaints against Mr. Aiken or against the solicitor's

13 office or against the Columbia Police Department or anybody

14 else involved in your case, you need to make those

15 complaints known by filing a postconviction-relief

16 application within one year of today's date.  Do you

17 understand that, sir?

18    THE DEFENDANT:  Yes, sir.

19    THE COURT:  Very well, Solicitor.  Be happy to hear

20 about it.

21    MR. EATON:  And if I may, Your Honor, one other detail

22 about ---

23    THE COURT:  Yes.

24    MR. EATON:  --- these charges is that they are

25 categorized as most-serious.  The attempted murders are

29

1    most-serious strikes for Mr. Lartman.  So I'd just like to

2    put on the record that, you know, he be advised of that.

3        THE COURT:  Well, I'm sure Mr. Aiken's already done

4    that.

5        MR. AIKEN:  I did that, Your Honor.

6        THE COURT:  And you understand what Mr. Aiken advised

7    you about the strikes?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  All right.

10        MR. EATON:  Thank you, Your Honor.

11        THE COURT:  Go ahead, Solicitor.

12        MR. EATON:  Your Honor, this incident was a all-out

13    shootout in the Vista here in Columbia the night of

14    September 16th, 2017.  Mr. Lartman and two of his

15    codefendants, John Bates and Keveas Gallman, are all

16    docketed on the trial docket next week.  Assistant

17    Solicitor Stephanie Taylor, Solicitor Gipson, and myself

18    have been preparing Mr. Lartman's case for trial and were

19    prepared to go forward until we reached this plea

20    negotiation in this case.

21        Your Honor, that night, the night of September 16th,

22    2017, it was the -- the first game of -- of the season of

23    Carolina football, the game versus Kentucky that night.

24        THE COURT:  Did they beat us that night?

25        MR. EATON:  They did.

1    THE COURT:  Yeah.  Go ahead.

2    MR. EATON:  It ---

3    THE COURT:  I remember.

4    MR. EATON:  --- was late ---

5    THE COURT:  I remember that game.

6    MR. EATON:  Yes, sir.  23-13.

7        It was late that night, around two in the morning in

8    the Vista.  Mr. Lartman and his codefendants had gone to a

9    club that has now been shuttered by the Columbia Police

10   Department called Club Empire.  Mr. Lartman's codefendant,

11   John Bates, is also -- he is a local rapper or, you know,

12   maybe statewide rapper, if you will, known by -- by the

13   name "Hun Dunn."  And Mr. Bates was the opening act for

14   another musician that night at Club Empire.

15       Mr. Bates brought with him a -- an entourage from

16   Newberry, to include Mr. Lartman.  And, Your Honor, the

17   members of his entourage brought with them a number of

18   guns.  And Mr. Lartman brought with him a gang dispute that

19   had been simmering in Newberry.  There had been prior gang-

20   related shootings back and forth in Newberry.  And that

21   gang dispute would -- would boil over that night, Your

22   Honor.

23       As the -- as the club let out around two in the

24   morning, Mr. Bates and Mr. Lartman got into a Mustang owned

25   by Mr. Bates' record label.  Mr. Lartman is affiliated with

31

the Crips in Newberry.  There'd been some other people from
Newberry who were not friends of Mr. Lartman and Mr. Bates
who were affiliated with the Bloods.  That included Khali
and Maleik Houseal.  They had also come to Club Empire that
night.

Mr. Lartman and his friends were aware of the presence
of Mr. -- of the Houseal brothers and their friends.  They
had -- they had had no words inside the club, but we know
that they had at least seen each other inside the club.

As the club let out, we have footage from the corner
of Lady and Park Street, right -- right where this club
was.  And we -- and we see what unfolded, Your Honor, which
is that Maleik Houseal, who is charged with UCP, who's been
prosecuted by the feds for possession of a gun that night
-- Maleik Houseal is on the sidewalk in a crowd of people.
He's very animated.  You -- we -- we have footage that
shows that he does have a gun.

Mr. Lartman and Mr. Bates get into the Mustang that
Mr. Bates was driving.  And they pull out just on the
sidewalk behind the club.  They're visible on the -- on the
footage.  And if I -- if the Court can indulge me, I'll
show you some very brief clips for your understanding at
the right ---

THE COURT:  Sure.

MR. EATON:  --- moment, Your Honor.

32

1        THE COURT:  You're going to do it now ---

2        MR. EATON:  Yes, sir.

3        THE COURT:  --- or later?  Doesn't matter.

4        MR. EATON:  And I'll -- I'll just explain a quick,

5   little thing ---

6        THE COURT:  Go ahead.

7        MR. EATON:  --- first.  So the footage shows the

8   Mustang sitting there.  It shows Maleik, you know, in a --

9   in a sort of animated way, walking up and down the

10  sidewalk.  It's obvious that he kind of knows something's

11  about to go down.

12       The footage of the Mustang is not perfect footage.

13  But what it shows is that while Maleik's back is turned,

14  there is just an eruption of gunfire out of the window of

15  the Mustang.  You see a -- many muzzle flashes come out of

16  that window.

17       THE COURT:  So who's left inside the car, Mr. Lartman?

18       MR. EATON:  Mr. Lartman ---

19       THE COURT:  Go ahead.

20       MR. EATON:  --- is the passenger.  Mr. Bates is the

21  driver.

22       THE COURT:  All right.

23       MR. EATON:  As soon as they open fire on Maleik, whose

24  back is turned, Maleik turns around; starts chasing the car

25  down the street.  The car pulls out.  He starts returning

33

1    fire at the car.  After the Mustang a BMW pulls out.  And

2    then a Crown Vic pulls out.

3         We see the passenger of the Crown Vic fire at least

4    one shot.  We see one muzzle flash come from the passenger

5    side of the Crown Vic.

6         Mr. Lartman is shot by Maleik.  Rounds -- bullets go

7    right through the Mustang and hit Mr. Lartman.  John Bates

8    drives him to Baptist Hospital.  And the other cars follow

9    them there, where they pull Mr. Lartman out and medical

10   personnel at the hospital take him inside.

11        A codefendant, Jarvis Tucker, who's driving the Crown

12   Victoria, moves the guns.  So there's guns in the Mustang.

13   There's a gun in the Crown Victoria.  The guns are moved to

14   the Crown Vic.  And then Mr. Tucker moves them from his

15   glove box to his trunk.  He's charged with accessory after

16   the fact, Your Honor.

17        From there, after dropping off Mr. Lartman, Mr. Bates

18   goes and performs at another club called "The Vault" in

19   Richland County.  He's actually shot in the foot at The

20   Vault in a totally separate incident in which no one's

21   charged.

22        And, Your Honor, if I can, just for your

23   understanding, go ahead and show you a few clips of this

24   footage, please.

25        THE COURT:  Sure.

34

1      MR. EATON:  So this is Lady and Park Street.  And

2  right here, Your Honor, we have -- this is the sidewalk

3  looking back up towards Gervais Street.  The door of the

4  club is right over here on Lady Street.

5      Right here on the sidewalk, we have the Mustang, of

6  which Mr. Lartman is the passenger.  And there's a -- a --

7  a bigger crowd of people back here.

8      (Whereupon, a portion of video was published in open

9  court.)

10     MR. EATON:  And so if Your Honor can see that, I'll

11 play it one more time.

12     (Whereupon, a portion of video was published in open

13 court.)

14     MR. EATON:  Right here, we have all the muzzle flashes

15 coming out of the driver's side of the Mustang and all the

16 people scattering.  I'm going to show Your Honor a wider

17 view of that.

18     (Whereupon, a portion of video was published in open

19 court.)

20     MR. EATON:  You can see one of the victims fall right

21 here.  He's hit.  That's Jovan Caldwell.  He's hit in the

22 back.  He has damage to his vertebra.

23     He's initially told he'll never walk again.  But he

24 does make a recovery.  He still has nerve damage today,

25 though.

35

1      THE COURT:  Say that again?

2      MR. EATON:  He did -- Mr. Jovan Caldwell was told he

3   would never walk again initially.  However, he did make a

4   full recovery -- well ---

5      THE COURT:  Okay.

6      MR. EATON:  --- I say full.  He still has nerve

7   problems.

8      THE COURT:  But he ---

9      MR. EATON:  He's on ---

10      THE COURT:  --- walks?

11      MR. EATON:  --- disability.  But he walks.  Yes, sir.

12   And I'll show you this clip, Your Honor.

13      (Whereupon, a portion of video was published in open

14   court.)

15      MR. EATON:  What -- so and let me make it clear:

16   There were seven people who were actually hit by rounds.

17      THE COURT:  Uh-huh.

18      MR. EATON:  Four of those I would call just completely

19   innocent victims.  Three of those were from Newberry.  And,

20   you know, Maleik, Khali, and Arevia were from Newberry and

21   affiliated with the Bloods.  Not that anyone deserves to

22   get shot, but the other four had nothing to do with

23   Newberry, gangs, a dispute, anything like that.  They were

24   just innocent victims out having a good time.

25      That included Gloria Massey, who's here in the

36

courtroom today.  She was visiting from Kentucky.  She was almost two blocks down Park Street in front of the Oyster Bar.

THE COURT:  Pearlz, I think it was.

MR. EATON:  Yes, sir.  Right at Pearlz and the Oyster Bar.

THE COURT:  Yeah.

MR. EATON:  And I'll show Your -- Your Honor a very brief clip of her.

(Whereupon, a portion of video was published in open court.)

MR. EATON:  She's standing right here.  And a round hits her right in the face.

So, Your Honor, you know, Mr. Lartman and Mr. Bates unleashed just a -- a -- a flurry of bullets that went flying around a crowded area there in the Vista.  And I'll -- I'll just briefly mention the victims who were hit, if ---

THE COURT:  All right.

MR. EATON:  --- I may.  Today in the courtroom we have Gloria Massey.  We have Kirstie ---

THE COURT:  Could you stand up so I can see you, please.

MS. MASSEY:  (Complied.)

THE COURT:  You're from Kentucky?

1     MS. MASSEY:  Yes, sir.

2     THE COURT:  What part?

3     MS. MASSEY:  Lexington.  Actually, Paris, but ---

4     THE COURT:  Fayette County, Kentucky.

5     MS. MASSEY:  Yes, sir.

6     THE COURT:  Yeah.  Okay.  I just wanted to make sure.

7  Thank you, ma'am.

8     MR. EATON:  We have Monica Reaves, who was shot in the

9  -- in the -- in the mouth through ---

10     THE COURT:  And you're from here; is that correct, Ms.

11  Reaves?

12     MS. REAVES:  Yes, sir.

13     MR. EATON:  Ms. -- Ms. Reaves was -- a -- a bullet

14  miraculously -- I mean, it's not miraculous that she was

15  hit.  But it's miraculous that the bullet went through and

16  through her cheek.

17     Kirstie Logan was shot in the knee.  We also have her

18  uncle, Leon Howard, here as well, Your Honor.

19     THE COURT:  All right.  And who's the person to the

20  left of Mr. Howard?

21     MR. EATON:  I believe -- media.

22     AUDIENCE MEMBER:  Oh, yeah.  Reporter.

23     MR. EATON:  A reporter, Your Honor.

24     THE COURT:  Huh?

25     MR. EATON:  A reporter, Your Honor.

38

1          THE COURT:  Oh, okay.  I'm sorry.  All right.

2          MR. EATON:  So Jovan Caldwell, who couldn't make it

3     today, was shot in the back, as I mentioned.  Then, Arevia

4     Pressley from Newberry, she dated Khali, one of the Bloods.

5     She was also shot in the knee.  Maleik was shot in the leg.

6     And Khali was shot in the leg.

7          And if I may as well, Mr. Aiken has seen these

8     pictures, just to show Your Honor some of the injuries as

9     they were right afterwards.

10          THE COURT:  All right, sir.

11          MR. EATON:  This is Kirstie Logan, where she was shot

12     in the leg.

13          THE COURT:  Just make sure Mr. Aiken can see them.

14     All right.

15          MR. EATON:  This is Jovan Caldwell, where he was shot

16     in the back.

17          THE COURT:  All right.  What caliber of pistol was it?

18          MR. EATON:  Mr. Lartman had a 9-millimeter.  Mr. Bates

19     had a .45.

20          THE COURT:  All right.

21          MR. EATON:  Maleik had a 9-mill.

22          This is Monica Reaves intubated after having been shot

23     in the face and the cheek.  This is Gloria Massey, again

24     intubated, having been shot through the face into the soft

25     tissue of the neck with -- with damage to her carotid

39

artery, a fractured mandible.

This is Maleik Houseal.  You know, I call him a victim in -- in quotes.  He was not the real innocent party in this incident.  But he did have a right to self-defense. He had his back turned when they opened fire.

Here's Arevia Pressley, shot in the knee.  And here is Khali Houseal, Your Honor, also shot in the leg.

THE COURT:  All right.

MR. EATON:  So, Your Honor, I -- I would -- would want -- like to address a little bit more about the negotiations in this case ---

THE COURT:  Go ahead.

MR. EATON:  --- especially as it relates to Mr. Bates. So we have a joint trial ready for next week.  Mr. Bates did have a conviction for attempted murder.  So we served him with a notice for life without parole.

THE COURT:  Is this going to trial next week, you said?

MR. EATON:  It was going -- it's -- it was ---

THE COURT:  It was going to?

MR. EATON:  Yes, sir.

THE COURT:  All right.

MR. EATON:  But for this -- but for this plea.

THE COURT:  Yeah.  Okay.

MR. EATON:  Mr. Bates, once served with that LWOP

40

1   notice, turned around and said, "I'm willing to say that

2   both Lartman and I were shooters out of the Mustang."

3   Bates initially told police that it was all Lartman.

4        THE COURT:  Uh-huh.

5        MR. EATON:  We didn't believe that, because we had a

6   .45 shell casing and a 9-mill shell casing that matched

7   those guns.  So we all along had a two-shooter theory that

8   both the driver and the passenger of the Mustang opened

9   fire on those Bloods from Newberry.

10        THE COURT:  All right.

11        MR. EATON:  Mr. Bates -- when he said that, when he

12   said, "I will say that we both shot," that was a game-

13   changer in this case.  As Your Honor is well aware, with

14   the *Bruton* and *Crawford* issues with the confrontation

15   clause, the state did have some challenges going forward at

16   trial with the possibility that a judge would sever our

17   joint trial, in which case the -- the state would be

18   somewhat hamstrung, if you will.

19        So when Mr. Bates said, "I'm willing to do this; I'm

20   willing to come forward, say we both shot," we did then

21   offer Mr. Bates a cap of 17 years.

22        THE COURT:  And he pled in front of Judge Newman, but

23   hasn't been sentenced yet ---

24        MR. EATON:  He has ---

25        THE COURT:  --- is my ---

41

1    MR. EATON:  --- not ---

2    THE COURT:  --- understanding.

3    MR. EATON:  --- been sentenced yet.

4    THE COURT:  Yeah.

5    MR. EATON:  He pled to that with the state's agreement

6    that we'll seek up to 17 years.

7    THE COURT:  Yeah.

8    MR. EATON:  Now, because of that, we then went to Mr.

9    Lartman and offered him today's deal of 18 to 25 years.

10    THE COURT:  Yeah.

11    MR. EATON:  Mr. Bates did not just win the race to the

12    courthouse.  He is also, in the state's view, less culpable

13    than Mr. Lartman for a few reasons.  First off, Mr. Bates

14    fully described to us the gang dispute from Newberry.  He

15    describes Mr. Lartman as being a high-ranking Crip in

16    Newberry.  He describes back and forth with the Bloods,

17    with the Houseal brothers, with shootings in Newberry.

18    Additionally, Mr. Bates confirmed our suspicions that

19    Bates had the .45 and that Lartman had the 9-mill.  We have

20    multiple ballistics matches to the 9-mill and only match to

21    the .45.  It's also consistent with the video in which,

22    from the best that we can tell, when you zoom in on that

23    window, it looks like there's an initial shot from the

24    bottom-right corner, which would be most consistent with

25    the driver; and then a barrage of shots kind of further up

42

1    and to the left of the window, which would be consistent

2    with Mr. Lartman.

3        So I believe what Mr. Bates has told us, not just

4    because he told us, but because it's consistent with all

5    the evidence that we have.

6        THE COURT:  All right, sir.

7        MR. EATON:  Lartman, for his part, told police nobody

8    shot, which is obviously not true.  We -- we reached out to

9    him about cooperation, and -- and he would not.

10        So this -- this cap that Mr. Bates got was -- was

11   necessary, given -- given the evidence and the reality of a

12   joint trial and those challenges.  But at the end of the

13   day, Your Honor, he'll be punished severely.  But I believe

14   that Mr. Lartman does deserve the high end of the range, 25

15   years, or at -- or close to it, Your Honor.

16        At the appropriate time, I believe the victims would

17   like to address you about this case.  And I'm -- may ask to

18   make a couple closing ---

19        THE COURT:  All right.

20        MR. EATON:  --- comments.

21        THE COURT:  What's Mr. Lartman's prior record, sir?

22        MR. EATON:  2008, assault and battery of a high and

23   aggravated nature, conspiracy, and strong-arm robbery;

24   2009, resisting arrest, trespassing, and failure to comply

25   with a police command.  He was revoked on parole in 2009.

43

1    He has a 2012 simple possession of marijuana and a 2013

2    discharging a gun into a dwelling, Your Honor.

3        THE COURT:  All right.  That covers it?

4        MR. EATON:  Sir?

5        THE COURT:  That covers it ---

6        MR. EATON:  Yes, Your Honor.

7        THE COURT:  --- his record?

8        Now, Mr. Aiken, Mr. Lartman, you heard the

9    presentation by the solicitor's office, Mr. Lartman,

10   including your prior record.  Now, what's been told me

11   today, is that substantially accurate and correct?

12       MR. AIKEN:  It is substantially accurate ---

13       THE COURT:  You agree, Mr. Lartman?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  Very well, sir.  I find that there's a

16   substantial factual basis for your plea, Mr. Lartman.  I

17   further find your decision to plead guilty to be freely,

18   voluntarily, knowingly, and intelligently made; that you've

19   had the advice of competent counsel, whom you indicate to

20   me you're completely satisfied with.  Therefore, I will

21   accept this plea.

22       I'll be happy to hear from the state additionally at

23   this time, sir, and the victims ---

24       MR. EATON:  Well ---

25       THE COURT:  --- if you want.  Yes, Your Honor.

44

1      MS. MASSEY:  My name is Gloria Denise Massey-Brannon.

2  And I just wanted to tell the Courts that from my

3  standpoint, the injuries that I received in this ---

4      THE COURT:  I'm sorry ---

5      MS. MASSEY:  --- shooting ---

6      THE COURT:  --- ma'am.  I'm going to ask you to come

7  down and speak into the microphone.  I'm having some

8  difficulty understanding you.

9      MS. MASSEY:  (Complied.)

10      THE COURT:  Yes, ma'am.

11      MS. MASSEY:  My name is Gloria Denise Massey.  And I

12  just wanted to state to the Courts that on my behalf, the

13  injuries that I sustained during this shooting have been

14  life-altering for life for me.  I still, to this day, I

15  can't eat.  I'm five-foot-seven; I weight 98 pounds.  And

16  it's not from lack of effort.

17      I've been to U.K.  I've been to ENT specialists.  I

18  lost partial vision in my right eye.  My right carotid

19  artery is filled with plaque, which increases my risk for

20  stroke drastically.

21      And during this, I also fractured my C2 in my neck.

22  So shooting me in the face just, to me, is an attempted

23  murder.  And the things that I'm going through just don't

24  seem right.

25      THE COURT:  All right.  Thank you, ma'am.

45

1      MR. HOWARD:  Thank you, Your Honor.

2      THE COURT:  Yes, sir.

3      MR. HOWARD:  I'm Leon Howard, a citizen here in

4  Richland County.  Kirstie Logan is my niece.  She ---

5      THE COURT:  You might need to back away from the

6  microphone just a tad.

7      MR. HOWARD:  (Complied.)

8      THE COURT:  Yeah.

9      MR. HOWARD:  Thank you, Your Honor.  You know, I can

10  attest to the person of being a caregiver for Kirstie

11  during these times.  She was shot in the knee.  At the time

12  she had -- I think a 3-year-old daughter who had to be

13  cared for.  Our family spent a tremendous of amount of time

14  taking her to and from the doctor.  I've spent countless

15  nights in the emergency room when she was in excruciating

16  pain.

17      And her -- her life has been altered, definitely.

18  She's here today, but she is intimidated; feel that she

19  can't speak before the Court because of some fear.  And,

20  you know, so -- so, Your Honor, I would hope that you

21  impose the maximum sentence that can be imposed on -- on

22  this person because they've done a tremendous amount of

23  damage to these families and to these victims.

24      That situation in the Vista could've been any one of

25  us.  And hopefully, we can send a clear message to people

46

1    all over this country that when they visit Richland County,

2    that they can be safe; that they can dine in the facilities

3    there in that -- in that area and not be subjected to what

4    these victims were subjected to.  That could've been any on

5    of us sitting in this courtroom, that our lives could've

6    been altered.

7        So I thank you for this opportunity to be able to come

8    before you.

9        THE COURT:  All right.  Thank you, Mr. Howard.

10        Anything further?

11        MR. EATON:  As Representative Howard said, Your Honor,

12    everybody, whether they are locals, whether they are from

13    Newberry, whether they are visitors from out of the state,

14    has a right to feel safe in this town.  This kind of

15    disregard for human life, this sort of shootout -- you

16    know, Wild West shootout in public in a crowd of people is

17    not something you would expect to see here.  It's something

18    you'd expect to see in some war-torn part of the world.

19        So because of the impact that they've had on these

20    lives, because of their criminal histories, because they

21    brought their gang beef from Newberry to Columbia, I think

22    the upper part of the range would be appropriate for Mr.

23    Lartman.

24        THE COURT:  All right.  Thank you, sir.

25        MR. EATON:  Yes, sir.

47

1          THE COURT:  Mr. Aiken, be happy to hear from you.

2          MR. AIKEN:  May it please the Court, Your Honor:  Mr.

3    Lartman is 29 years old.  He has been in a seven-year

4    relationship with this nice lady here, Tiffany Bookman.

5    They have two children.  One of them is named G████████, a

6    daughter, who's 4 years old.  And the other one is named

7    G.████████, who's also -- who's a boy, who's also 4 years

8    old -- nine months apart, not twins.

9          THE COURT:  Yes, sir.  Irish twins, I think you say.

10         MR. AIKEN:  I was going to say that, but I think

11   that's considered a slur now.

12         THE COURT:  Well, might be, but that's -- that's the

13   history behind it.

14         MR. AIKEN:  Mr. Lartman was working at West Frazier,

15   which is a sawmill and a lumberyard.  He had a really good

16   job.  He'd been working there for a year.  He was making

17   like $14.50 an hour.  He was supporting Ms. Bookman and his

18   two children and himself with his -- with his salary.  He's

19   doing the best he can to take care of his family.

20         Mr. Lartman's a smart man.  He's a lot smarter than

21   most of my clients are.  He completely understood what was

22   going on in this case, understood all the evidence.  And I

23   think he made a logical decision here, based upon all the

24   evidence.

25         But the decision was more than just logical.  In large

48

1    part, his decision is based on not putting the victims

2    through the rigors of a trial.  Because I think that would

3    be very, very difficult for these -- for these victims to

4    go through a trial and Mr. Lartman's not interested in

5    having that happen.

6         Now, one thing that -- that Mr. Eaton didn't tell you,

7    Mr. Bates -- I mean -- excuse me -- Mr. Lartman was

8    actually shot as part of this whole ---

9         THE COURT:  I think he did ---

10        MR. AIKEN:  --- episode.

11        THE COURT:  --- say that.

12        MR. AIKEN:  Okay.  Well, I'm -- I'm sorry.  I ---

13        THE COURT:  That's fine.

14        MR. AIKEN:  --- missed it, then.  I -- I apologize.

15        THE COURT:  I think clearly that he was shot through

16   the door of the car.

17        MR. EATON:  Yes, sir.

18        THE COURT:  Yeah.  But go ahead.

19        MR. AIKEN:  Actually, he -- he was -- he was shot in

20   the center of the back, right at the spinal cord and was in

21   the hospital for three months and then went -- transitioned

22   from the hospital to the -- to the jail.  And as ---

23        THE COURT:  Was he under arrest at the time he was in

24   the hospital?  Did he have guards?

25        MR. AIKEN:  For part ---

49

1    THE COURT:  From ---

2    MR. AIKEN:  --- for part -- for part of the time ---

3    THE COURT:  Yeah.

4    MR. AIKEN:  --- he was at Correct Care, which, as I

5    understand it, is a locked facility.  So I -- I think part

6    of that time, he was actually ---

7    THE COURT:  Okay.

8    MR. AIKEN:  --- in custody.

9    THE COURT:  We'll figure it out.  Go ahead.

10   MR. AIKEN:  Okay, Your Honor.  He was told by his

11   doctors that he would have to learn to walk again.  And he

12   successfully did that.

13   And at -- as Mr. Eaton told you, Mr. Bates has pled

14   guilty, deferred sentence, 17-year cap.  And in cases like

15   this -- I've been doing this for 29 years.  In cases like

16   this, you often have the thought pop in your mind:  What

17   were these people thinking?  And you think about that for a

18   little bit.  And you realize they weren't thinking at all.

19   The -- these things happen in an instant.  And in an

20   instant, lives are changed.  And when you sentence Mr.

21   Lartman, his life is going to change in an instant as well.

22   And we thank you for hearing us, Your Honor, and we

23   hope for the best.  Thank you.

24   THE COURT:  All right.  Thank you, Mr. Aiken.

25   Mr. Lartman, is there anything you'd like to tell me,

50

1  sir?

2        THE DEFENDANT:  Yes, Your Honor.  I would like to --

3  you say anything I would like ---

4        THE COURT:  Yeah.

5        THE DEFENDANT:  --- tell you?  I would like to tell

6  you that things seem what they going off is what Bates

7  saying, just to save hisself.  But at the same time, I

8  wasn't up here for a dispute with no one.  I came to

9  support a friend.

10       I didn't come up here looking for no trouble.  Trouble

11 wasn't even me that night.  It was with Bates.  I never

12 initiated none of this.

13       What he's saying is what he trying to do is work

14 hisself off.  I got a family I provide for, two kids.  I'm

15 sorry that people got hurt.  I got hurt.  And I'm sorry,

16 you know.  I can't take that back.  But I do apologize for

17 our actions.

18       THE COURT:  All right.  Thank you, Mr. Lartman.

19       Anything further?

20       MR. EATON:  No, Your Honor.

21       THE COURT:  All right.  We need to figure out how much

22 credit for time served he gets.

23       MR. EATON:  Your Honor, we calculate 564 days.  Now

24 I'm ---

25       THE COURT:  564?

51

1    MR. EATON:  Yes, Your Honor.  I don't know if Mr.

2    Aiken wants to ---

3    THE COURT:  Well, I -- I can put the 564.  If it

4    changes later on, we can amend it.

5    MR. AIKEN:  Yes, sir.

6    THE COURT:  All right?  I'll go with the 564, you

7    guys.

8    MR. AIKEN:  Okay, Your Honor.  That's a -- that

9    satisfactory.

10    THE COURT:  All right.

11    (Off the record briefly.)

12    THE COURT:  Very well.  Indictments No. 2018-8286,

13    this is a -- the indictment for unlawful possession of a

14    pistol by a person convicted of a crime of violence;

15    Indictment 2018-8285, this is the indictment for possession

16    of a weapon during the commission of a violent crime:

17    Sentence, 5 years; credit for time served of 564 days.

18    So Indictments No. 2018-8277, the attempted murder;

19    -8274, attempted murder; -8284, attempted murder; -8282,

20    attempted murder; -8280, attempted murder; -8276, attempted

21    murder; and -8278, attempted murder:  You, Jenorris

22    Lartman, should be committed to the South Carolina

23    Department of Correction for a period of 25 years; credit

24    for time served of 564 days.

25    These matters are concurrent with one another.

52

1        This is unfortunate incident for everybody involved.

2    Both sides, you have my deepest concerns and sympathies.

3        Thank you all so very much.  This matter is ended.

4        (Whereupon, the proceeding was concluded at 11:24

5        a.m.)

6                **--- END OF TRANSCRIPT OF RECORD ---**

53

**CERTIFICATE**


I, THE UNDERSIGNED MARYANN S. NEVERS, CERTIFIED

VERBATIM REPORTER - MASTER, CERTIFICATE OF MERIT,

OFFICIAL COURT REPORTER FOR THE EIGHTH JUDICIAL

CIRCUIT OF THE STATE OF SOUTH CAROLINA, DO HEREBY

CERTIFY THAT THE FOREGOING IS A TRUE, ACCURATE AND

COMPLETE TRANSCRIPT OF RECORD IN THE HEARING OF THE

CAPTIONED CAUSE, RELATIVE TO APPEAL, IN THE CIRCUIT

COURT FOR RICHLAND, SOUTH CAROLINA, ON THE 2ND DAY OF

APRIL, 2019.

I DO FURTHER CERTIFY THAT I AM NEITHER OF KIN,

COUNSEL, NOR INTEREST IN ANY PARTY HERETO.

_____

MARYANN S. NEVERS, CVR-M-CM


COLUMBIA, SOUTH CAROLINA

APRIL 24, 2019